11. Plaintiff's file will include (i) forensic evaluation report completed by Kimberly Ackerson, Ph.D., Certified Forensic Examiner on August 16, 1995 (ii) Forensic Evaluation Report completed by Kathy A. Ronan, Ph.D., Certified Forensic Examiner on May 2, 1996.

12. Several times, Plaintiff averred on record, continuously (i) low white blood cell count (ii) a right ear infection that needed steroids but Plaintiff was treating everyday with hydrogen peroxide (iii) a diet of a gallon of whole milk a day, brown-shelled eggs, brown rice, cucumbers, carrots, honey, 100% whole wheat, apple-cider vinegar, beans, no meat, tuna fish, and peanut butter.

13. Verona Lawson, MD, totally ignored fact that Plaintiff emphatically averred with reason that he was doing fine with the new medication ( Plaintiff is an 8404 Navy Corpsman - Marine Corps Headquarters, across the street from the Pentagon). Verona Lawson offended Plaintiff by secretly changing Plaintiff's medication to a contraindicated medicine to blood dyscrasias.

14. Plaintiff was caught not taking contraindicated medication.

15. James Hooper IV, MD, in a smooth, malicious, deliberate, and deceptive manner placed plaintiff on a lethal dose of medications ( blood tests and visual examination will provide clear notice and record of result of intent to commit attempted murder).

16. Dr. Hooper told Plaintiff that his red blood cell count was high... Plaintiff quickly responded saying my WBC count is very low.

17. Plaintiff gave THSMF his DD214's from the Army and Navy. Both documents corroborated Plaintiff's repeated averments from the first day Plaintiff was placed in custody at THSMF.

18. A polygraph examination will corroborate Plaintiff's averments.

19. If left unchecked the medications that James Hooper IV, MD, and Verona Lawson, MD, placed Plaintiff on and the deliberate neglect and misrepresentations of Ljiljana Sepic, MD, causing Plaintiff to remain on the inappropriate dose of medication ( Why so much?), Plaintiff would have deteriorated due to a compromised cellular response defense and production.

20. Plaintiff wished the Court would grant his motion to extend deadline, dated March 11, 2002, so Plaintiff could request a speedy trial date.

21. Two days before the deadline to respond to the Court Order of January 24, 2002, Plaintiff experienced a severe cerebral disorienting insult that lasted about 10 days.

22. That strange, mysterious and sudden onset of something that resulted in a cerebral insult causing extreme disorientation was coupled with another assault-like action from a crack head/ snow bird that has mysteriously been stalking Plaintiff, forcing togetherness since the day after Plaintiff filed actions (i) CV-01-3298SH (ii) CV-2001-3300 (iii) CV-01-3528 (iv) CV-2001-3581 (v) CV-01-3299, all of a sudden these remarkable events began and has continued...

22. Plaintiff had to remain supinate for about 10 days, until that awful, offensive, and defeating feeling naturally went away. Not a headache, but definite drifting, distance, and imbalance with constant advancement assistance needed.

23. Plaintiff could not function, compos mentis, until February 18, 2002.

24. Plaintiff wishes the Court will grant his petition for reconsideration to set aside Order of February 25, 2002 (motion to dismiss-granted) and Order a short Court date.

25. Plaintiff intends to file a motion to produce pursuant to Ala. Rules of Civil Procedure, rule 26,30,31,33,35, and 45, based on the deliberate ,offensive , collusive , and malicious actions of James Hooper IV, MD (Clinical Director of THSMF), Verona Lawson, MD, Ljiljana Sepic, MD, David E. Gay (Facility Director of THSMF), and the patient advocate at THSMF during the time from January 30, 1996 to May 10, 1999.

Dated: May 6, 2002

Respectfully submitted,

Larry Linstrome Hodge
Safford, Alabama 36773-0075

PLAINTIFF'S EXHIBIT
62
08/10/2005